BURNAP ET AL. v. THE SYLVANIA BUTTER CO. ET AL.

LIEN, WHEN NOT TO ATTACH.

Where the promoters of a certain enterprise, that of erecting butter factories, secure the signatures of a required number of persons who are willing to take an interest in the enterprise and subscribe for a certain amount of stock, and subsequently, after the completion of the factory, certain of the stockholders formed a corporation and the premises were deeded to such corporation, and shares conveyed in proportion to the amount paid upon the subscription of the parties, but it turned out that the amount of stock that was subscribed for was not all paid; *held*, that the promoters of such enterprise are not entitled to a mechanic's lien upon the whole premises, or upon a *pro rata* share of the premises, equal to the amount of stock that is still unpaid.

APPEAL.

HAYNES, J.

In this case the plaintiffs are partners and the Sylvania Butter Co. is a corporation incorporated under the laws of the state of Ohio, doing business at Sylvania, Ohio. However, at the time the occurrances commenced upon which arose the matter in controversy, Burnap & Burnap were engaged in the business, it seems, of erecting butter factories or creameries. The course of business they pursued was, in substance, to proceed to some place and obtain signatures from persons who might be willing to take an interest in the erection under contract of a creamery building. The parties who signed, signed a paper or a contract to which I will refer later on, and when a certain number and amount of signatures were obtained, Burnap & Burnap proceeded to put up a building upon property which was dedicated for that purpose, to be designated by Burnap & Burnap. And it was agreed and expected that the parties who signed this paper would proceed to become an incorporated company, and the ultimate result would be that there would be a conveyance of the property to the corporation. The parties who made signature, signed for a certain number of shares in the corporation, provision being made that they should be entitled to shares in proportion to the amount they should pay upon their subscriptions. In this case the contract provided, among other things: "Burnap & Burnap, of Toledo, Ohio, party of the first part, hereby agree with the undersigned subscribers hereto, party of the second part, to build, erect, complete and equip for said party of the second part, a butter factory at or near Sylvania, Lucas county, Ohio, as follows, to-wit:" And then follows a description of the property building, etc.

"Said building shall be constructed in substantial accordance with the specifications hereon, in a workmanlike manner, the boiler, and all other machinery and fixtures, shall be properly set up, 'and shall be in good running order before the party or the second part shall be required to pay for said factory. The party of the second part hereby agrees to select suitable and reasonably level land for said building, together with well, spring or reservoir on said lot, for the use of the business; and it is further understood that in case the said second party shall fail to furnish said land and water within ten days after the execution of this contract the full one-fourth part face value of each of the subscriptions hereto shall constitute and be liquidated damages to be paid by said subscribers to said first party."

Then follows two clauses:

"As soon as the above amount ($3,150) is subscribed, or in a reasonable time thereafter, the subscribers agree to incorporate under the laws of the State, as therein provided, fixing the aggregate amount of stock at not less than the amount subscribed, to be divided into shares of $100 each. Said share or shares, as above stated, to be issued to the subscribers hereto in proportion to their paid-up interest herein, *and each stockholder shall be liable only for the amount subscribed by him.*

"It is further understood by and between the parties hereto, that if the subscriptions hereto shall amount to more than $3,150, and less than $4,500, the foregoing agreement, designated 'Form A,' shall constitute the agreement between the parties except as hereinafter specified. If the subscriptions hereto shall amount to $4,500 or more, then the agreement hereto attached, designated 'Form B 2,' shall constitute the agreement between the parties. Form 'B 2,' containing the above provisions, the same as form 'A.'"

The signatures to these papers are substantially in the same form in the printed heading, "Names of Subscribers," "No. of Shares," "Amount Stock After Incorporation." The first one is "Earl Harroun, 1 share, $100." The others follow, a certain number of shares and a certain amount.

The agents or persons employed by Burnap & Burnap proceeded to solicit subscriptions to this stock until they obtained the requisite amount of $4,500 subscribed to the stock of the compony. They got one party to subscribe for two shares, to be paid for in land. The plaintiffs then went to work and put up the building, and finished it completely, and at a meeting of those who had subscribed to the stock, it was delivered to them, and they took possession of it. Subsequently to that certain of the stockholders formed a corporation, and these premises were deeded by the person who had made that subscription to that corporation, and they are now held by the butter company. It turns out in the end that the amount of stock that was subscribed was not all paid; that there was only collected some $3,000, or an amount which would leave an indebtedness of about $1,300 unpaid. There are $300 of subscriptions that the parties making them say that they agreed with the agents to pay in land, and they are willing to make the conveyances of land as they agreed, but money they will not, leaving about $1,000 subscribed by parties who can't be compelled to pay by action at law—execution proof, it is said—who have not at any time made any payments whatever, nor have they become stockholders in the corporation.

Under this state of facts, Burnap & Burnap proceeded in due time to file a mechanic's lien against this property, and an action at law was begun against the parties, and also to enforce the mechanic's lien. The action at law has been disposed of. This action, which was a part of that one, remains and has been brought into this court for the purpose of enforcing the mechanic's lien upon the premises. The plaintiff's claim that they are entitled to a mechanic's lien upon the whole premises, or at least upon a *pro rata* share of the premises equal to amount of stock that is still unpaid, to wit: $1,300, and the question here is whether they are entitled to maintain an action to enforce the mechanic's lien, or whether they have rightfully any mechanic's lien upon the premises.

The question is an interesting one, and has been argued very fully by counsel, and authorities have been cited; but there are not many authorities to be cited upon this particular question. The primary question suggested by counsel is, whether this contract is a joint or several contract. We think there is no question under the authorities that it is a several contract; and it is not very strongly contended, indeed, it is admitted, that the weight of authority is in favor of that proposition. There is only one case that really approaches this case in regard to the mechanic's lien, and that is 63 Mo., 477, which was decided by the Missouri court of appeals, sitting at Kansas City. It was held in that case that there was no mechanic's lien obtained by the promoters who were there, Davis & Rankin, who had a contract substantially like this. It was suggested by that court that there might be a lien on some part of the property, but the court held, under the proofs and pleadings of that case, that the lien could not be sustained.

There is a case found in the Iowa reports that throws a little light upon the question — *Smith* v. *Iowa City Loan Association*, 30 Ia., 164. That is a case where a building company had agreed to sell a lot to a third party, B, and C, the contractor, agreed with the building company

to put upon the premises a house for B. The association was to pay $875, and B was to pay $125, the title still remaining in the association. C, contracted directly with the association to build. Afterwards B, refused to pay the $125, the building have been built, and eventually refused to take the property. C, sought to enforce a mechanic's lien on the premises, and the supreme court held that he could not do so. The only person to whom he expected to look, or could look, was the association, and the contract with it being for $875, and it having tendered that and offered to pay it, there was no mechanic's lien.

Without discussing this question at length, we think, as was intimated on the trial, that no lien should be allowed in this case upon any portion of this property; largely for the reason that under this contract there was an agreement that persons were to take this number of shares, and the property was to be deeded to the corporation, and stock was to be issued to the parties in proportion to the amount paid, and to none others; and there was also an agreement, in substance, between Burnap & Burnap and these parties, that the persons who subscribed for stock should not be held in any manner or form for the action of the other parties, or for the debt of the other parties. To fasten a lien upon an aliquot portion of this property would be simply to make a provision that unless the owners of a balance of the stock, or the corporation itself, paid the amount of $1,300, then their property should be sold. It is as bad for them as if the court should order the sale of the whole property. Under the circumstances, Burnap & Burnap promoting this scheme, making arrangements for the corporation, making provision that the stock should be issued to persons only who paid for it, and that the property should be deeded to the corporation, we think, have no right to take a mechanic's lien, and they ought not, either in equity or justice, have any lien on the property as against the corporation. Whether or not they may not be subrogated to the rights of the parties who have not paid up for the stock we do not decide, but as the case no stands the petition will be dismissed.

*R. S. Holbrook*, for Plaintiff.

*Geo. B. Boone* and *J. C. Jones*, for Defendants.